IN THE CIRCUIT COURT

FOR

BALTIMORE CITY

| | |
|---|---|
| **Shawntae Jones** <br> 8618 Rock Oak Rd <br> Parkville, MD 21234 <br><br> *Plaintiff,* <br><br> v. <br><br> **Sam Cogen, Sheriff** <br> 100 North Calvert Street <br> Suite 104 <br> Baltimore, MD 21202 <br><br> <u>Serve On:</u> <br> Anthony Brown, Attorney General <br> Office of the Attorney General <br> 200 St. Paul Place <br> Baltimore MD 21202 <br><br> *Defendant.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) **Case No.:** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# COMPLAINT
## AND DEMAND FOR JURY TRIAL

Shawntae Jones, Plaintiff, (hereinafter "Plaintiff" or "Jones") by John B. Stolarz, and Michael G. Raimondi, his attorneys, and sues, Sheriff Sam Cogen, in his official capacity, (hereinafter referred to as "Sheriff" or "Defendant") as Defendant, for discrimination under the Americans with Disabilities Act and in support of his claims states as follows:

## **JURISDICTION**

1.  Plaintiff was at all times relevant an employee of the Defendant.

2. The Defendant, in his official capacity, is a state employee for purposes of this lawsuit.

3. The Plaintiff has fulfilled the jurisdictional requirements of Title VII of the ADA, by filing a charge of Discrimination on March 29, 2024, with the Equal Employment Opportunity Commission, Charge number 531-2024-02552.

4. The EEOC Charge of Discrimination was amended to include the Defendant.

5. On May 23, 2024, the Defendant filed a response to the claims in the Plaintiff's EEOC Charge of Discrimination.

6. The EEOC issued a Right to Sue letter on May 30, 2025, which was viewed by counsel for the Plaintiff on or about June 6, 2025.

7. This Court has concurrent jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1331.

8. The Plaintiff's employment was in the City of Baltimore, Maryland.

9. The Defendant's work was conducted in the City of Baltimore, Maryland.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. On March 29, 2024, the Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, Charge number 531-2024-02552. The EEOC Charge of Discrimination was amended to include the Defendant. On May 23, 2024, the Defendant filed a response to the claims in the Plaintiff's EEOC Charge of Discrimination.

11. The EEOC issued a Right to Sue letter on May 30, 2025, which was viewed by counsel for the Plaintiff on or about June 6, 2025.

## COMPLIANCE WITH THE MARYLAND TORT CLAIMS ACT

12. Pursuant to Md. State Government Code Ann §§ 12-106 (c)(2)(i), the Plaintiff satisfied the conditions precedent of the notice requirements under the Maryland Tort Claims Act. The Plaintiff provided the Defendant with a copy of the EEOC Charge of Discrimination, Charge number 531-2024-02552, within one year of the injury. The EEOC Charge of Discrimination provided the Defendant with both actual and/or constructive knowledge of the Plaintiff's injury, including the date and location where the Plaintiff's injury occurred, as evidenced by the May 23, 2024, Defendant's response to the EEOC Charge of Discrimination.

## STATEMENT OF FACTS

13. On October 22, 2022, the Plaintiff was offered and accepted employment with the Defendant, located in Baltimore City, Maryland.

14. Prior to his first day, the Plaintiff took and passed extensive pre-employment physical examinations, including a three-minute agility test, all done under the supervision of the Defendant.

15. From Plaintiff's first day, Tuesday, November 22, 2022, through Friday, March 3, 2023, the Plaintiff worked as a *trainee* for the position of Deputy Sheriff in Baltimore City. Tuesday, November 22, 2022, through Friday, March 3, 2023, is hereinafter referred to as "the training period."

16. During this training period, the Plaintiff was *never* sworn to uphold the duties of the Defendant and *never* wore either the badge or uniform of the Deputy Sheriff.

17. During this training period, the Plaintiff wore brown khaki pants and black shirts. The Plaintiff supplied his own khaki pants and black shirts. The training uniform was *not* supplied

nor paid for by the Sheriff's Office.

18. During this training period, the Plaintiff was *not* supplied with a gun, *nor* did he carry a gun, unlike sworn Deputy Sheriffs.

19. During this training period, the Plaintiff shadowed other Deputy Sheriffs inside the courthouse but lacked any legal authority of his own inside or outside the courthouse, for the Plaintiff was only a trainee and not a Deputy Sheriff.

20. During this training period, it was not uncommon for other Deputy Sheriffs to comment positively on the Plaintiff's work and bestow words of praise and encouragement upon Mr. Jones.

21. At 6'4" tall and over 300 pounds, other Deputy Sheriffs noted Plaintiff's presence inside the courtroom brought about a certain calm that only a person of his heft could provide.

22. During this training period, the Plaintiff was repeatedly told that he was doing well and that if the Police Academy did not have a new class starting soon, he would become a Deputy Sheriff based upon his successful apprenticeship and completion of Defendant's internal on-the-job training. During the training period, the Plaintiff always successfully completed, accomplished, and performed any physical requirement necessary to carry out the duties of a Deputy Sheriff.

23. On March 6, 2023, the Police Academy started a new training class, and the Plaintiff was instructed to and reported to the Police Academy.

24. On this first day of Police Academy training, the Plaintiff, who is approximately 6'4" tall and weighs over 300 pounds, successfully completed all tasks and physical training, exercises, and activities, but in a slow and deliberate manner similar to an NFL running back and offensive lineman, both of whom complete a 40 yard dash, but at different paces and speed. And,

although the Plaintiff may not be swift, the Plaintiff can bench press far more than most people, especially those people shorter in physical stature. By way of comparison, what the Plaintiff may lack in speed, the Plaintiff more than makes up for in physical strength.

25.     Contrary to the Plaintiff's good physical fitness, on March 8, 2023, the Defendant placed Plaintiff on "Medical Suspension." On March 8, 2023, the Defendant never provided the Plaintiff with a reason for his medical suspension.

26.     On March 8, 2023, the Plaintiff was verbally advised by the Defendant that he would be provided with a more thorough physical examination to determine if he was able to perform the essential functions of being a Deputy Sheriff.

27.     The Plaintiff was always physically able to perform the essential functions of the job. Additionally, the Plaintiff repeatedly called the Defendant and requested the promised medical examination.

28.     On June 8, 2023, the Plaintiff was terminated from employment for (1) "his inability to participate in the physical conditioning portion of the Police Academy" and (2) "failure to disclose prior injuries during your pre-hire exam."

29.     The Defendant never disclosed what, if any, prior injury the Plaintiff had that would, if known, had precluded him from the job of Deputy Sheriff. The ADA provides that employers "shall not require a medical examination and shall not make inquiries of an employee as to whether such individual with a disability….,unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. §12112(d)(4)(A); 29 C.F.R. § 1630.13(b), 14(c).

30. "Whether a medical inquiry is job-related and consistent with business necessity "is an objective inquiry." *Coffey v. Norfolk S. Ry. Co.*, 23 F.4th 332, 339 (4th Cir, 2022), quoting Hannah P. v. Coates, 916 F. 3rd 327, 339 (4th Cir. 2019).

31. The Defendant never demonstrated or provided the Plaintiff with an objectively reasonable basis to believe the employee was unable to carry out the employee's duties. *Id.* at 336 (citation omitted).

32. The non-objective determinations made by the Defendant had found the Plaintiff to have a disability, as he was considered unable to perform a major life activity that prevented him from "participating in the physical conditioning portion of the Police Academy" and rendered him ineligible for employment with the Defendant.

33. The ADA defines "disability" as: "being regarded as having such an impairment." 42 U.S.C. § 12102(1).

34. The Plaintiff was involuntarily prevented from participating in the "physical conditioning" portion of the Police Training academy by the Defendant.

35. The Plaintiff was involuntarily placed on a Medical Suspension without the Defendant ever providing any objective evidence for this decision.

36. The Plaintiff never failed to disclose any prior injuries during his pre-hire exam that were in any way relevant or would preclude the Plaintiff from performing the essential functions of the job of Deputy Sheriff.

37. The Defendant broke the promise to the Plaintiff to have him examined during his "Medical Suspension" period to determine if he could perform the essential functions of the job.

38. The Defendant never retained an Occupational Medicine Physician who is an expert in fitness for duty (FFD) tests, as they have specific knowledge of the relationship between a worker's health and the physical demands of their job.

39. The Defendant *never* made a good faith or objectively reasonable effort to determine if the Plaintiff was unable to "participate in the physical conditioning portion of the Police Academy."

40. The Defendant *never* made a good faith or objectively reasonable effort to determine if the Plaintiff had any prior injuries that, if known, would have rendered him unable to perform the essential functions of being a Deputy Sheriff.

41. The Defendant was never provided with any evidence that he had prior injuries that would preclude him from performing the essential functions of his job.

42. The Plaintiff was *never* informed as to why he passed all of the pre-employment physical examination tests, yet was suddenly, without any evidence being produced by the Defendant, found to have pre-employment injuries that would preclude him from performing the essential functions of the job of Deputy Sheriff..

43. The Plaintiff was terminated based upon a perceived disability as opposed to an actual disability.

44. The Plaintiff successfully passed all pre-employment physical examinations.

45. The Plaintiff successfully accomplished, completed and fulfilled all of the essential functions of a Deputy Sheriff while in training.

46. At no time during the training period was the Plaintiff ever unable to perform the essential functions of being a Deputy Sheriff.

47. At no time during the training period was the Plaintiff ever given a warning, written or verbal, about not being able to physically perform the essential functions of being a Deputy Sheriff.

48. During the training period, the Plaintiff's record is completely unblemished.

49. During the training period, the Plaintiff performed his duties successfully and at all times met his employer's expectations.

50. In implementing and enforcing the Defendant's decision to terminate the employment of the Plaintiff, the Defendant subjected the Plaintiff to unlawful medical inquiries and fired the Plaintiff for his failure to disclose injuries that were *not* objectively related to the job-related duties nor a matter of business necessity.

## COUNT I
## DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT (REGARDED AS DISABLED)
## (42 U.S.C. § 12101 *et seq.*)

51. The Plaintiff incorporates by reference the allegations set forth in the Paragraphs above, as if fully set forth herein.

52. Under the 2008 amendments to the ADA, an individual is "regarded as" disabled when he is perceived as having a physical or mental impairment, regardless of whether the impairment actually exists or is perceived to limit a major life activity. 42 U.S.C. § 12102(3)(A). "[A]n employee has a 'disability' under the ADA when that employee actually has, or is perceived as having, an impairment that is not transitory and minor." *EEOC v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. ).

2019). "Importantly, what matters for the 'regarded as' theory is whether the [employer] perceived [the plaintiff] as impaired, not whether he was actually impaired." *Forsyth v. Univ. of Alabama, Bd. of Trustees*, No. 20-12513, 2021 WL 4075728, at *4 (11th Cir. Sept. 8, 2021). This "more liberal standard" makes "it significantly easier for a plaintiff to show disability." *Coker v. Enhanced Senior Living, Inc.*, 897 F.Supp.2d 1366, 1374 (N.D. Ga. 2012) (quoting *Barlow v. Walgreen Co.*, No. 8:11–cv–71–T–30EAJ, 2012 WL 868807, at *4 (M.D.Fla. Mar. 14, 2012)).

53. At the time that Plaintiff was terminated, Defendant regarded him as disabled:

a. because Defendant claimed he was unable to participate in the police academy training.

b. because Defendant claimed the Plaintiff had a pre-existing injury that, by implication, disqualified the Plaintiff from becoming a Deputy Sheriff.

c. because even though the Plaintiff completed and passed all of the pre-employment physical examination tests, the Defendant refused to permit the Plaintiff to complete the Police Academy training session.

d. because the Defendant never engaged in any reasonably objective physical examination of the Plaintiff to determine if the Plaintiff was able to perform the essential duties of being a Deputy Sheriff.

e. because during the training period, when the Plaintiff shadowed other Deputies about the courthouses, the Plaintiff's work met the expectations of the Defendant.

f. because the Defendant never engaged the services of a physician who specializes in Occupational Medicine, and as such, would be able to determine, with reasonable objectivity, if the Plaintiff were able to perform the essential functions of being a Deputy Sheriff.

g. because the Plaintiff is big, 6'4", tall, and has excellent upper body strength, and the Defendant is unable to justify with any reasonable objectivity why a Deputy Sheriff with big, tall, and strong upper body strength is less desirable from any objective standard as a Deputy Sheriff than a small, weak but fast shorter Deputy Sheriff.

h. because the Defendant broke the promise made to the Plaintiff, after placing the Plaintiff on Medical Suspension, and never had the Plaintiff examined for fitness for duty. The breach of this promise indicates a subjective determination as opposed to an objective determination and a perceived, regarded as, disability, as opposed to an actual disability.

54, The Defendant regarded the Plaintiff's disability as neither transitory nor minor and as such, the Plaintiff was limited by one or more of life's major activities, such as:

    a. prohibited from working at the courthouses as a trainee of the Defendant, even though the Plaintiff met the Defendant's expectations during the three-month training period from November 2022 to March 2023.

55. The Plaintiff was "regarded as" disabled by Defendant as evidenced by the Defendant placing him on a Medical Suspension effective March 8, 2023.
42 U.S.C. § 12102(3).

56. The assumptions made by the Defendant that Plaintiff was unable to perform the essential functions of his position were not based on any objective, and reasonable understanding of his physical condition. However, the Plaintiff had demonstrated his ability to perform the essential functions of the position of Deputy Sheriff during the training period, November 2022 through March 2023, without the need for any accommodation.

## COUNT II
## DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT (UNLAWFUL MEDICAL EXAMINATION OR INQUIRY)
## (42 U.S.C. § 12101 *et seq.*)

57. The Plaintiff incorporates by reference the allegations set forth in the Paragraphs above, as if fully set forth herein.

58. On June 8, 2023, the Plaintiff was terminated from employment for …., (2) "failure to disclose prior injuries during your pre-hire exam."

59. The ADA's prohibition on discrimination "include[s] medical examinations and inquiries." 42 U.S.C.A. § 12112(d)(1).

60. The Plaintiff started working for the Defendant on November 22, 2022. The Plaintiff worked from November 2022 through March 2023 up to the Defendant's expectations. Once the Plaintiff has been hired, it is a violation of the ADA to require the Plaintiff to disclose all prior injuries. *See EEOC v. Prevo's Family Mkt.*, 135 F.3d 1089, 1094 (1998).

61. The Defendant never established why such medical inquiries into the Plaintiff's prior injuries were a job-related necessity, or consistent with the business necessity of the job.

62. The demand by the Defendant that Plaintiff must disclose all prior injuries before being hired, even if not relevant, or not job-related, or related to a business necessity, is the type of open-ended medical inquiry prohibited by the ADA. *See* 42 U.S.C. § 12112(d)(4)(A); 29 C.F.R. § 1630.13(b), 14(c).

63. "Whether a medical inquiry is job-related and consistent with business necessity 'is an objective inquiry.'" *Coffey v. Norfolk S. Ry. Co.*, 23 F.4th 332, 339 (4th Cir. 2022) (quoting *Hannah P. v. Coats*, 916 F.3d 327, 339 (4th Cir. 2019)). An employer must have an objectively reasonable basis to believe that the employee cannot carry out the employee's duties. *Id.* at 336

11

(citation omitted).  "An employer's request for a medical examination is job-related and consistent with business necessity when: "(1) the employee requests an accommodation; (2) the employee's ability to perform the essential functions of the job is impaired; or (3) the employee poses a direct threat to himself or others." *Hannah P.*, 916 F.3d at 339 (quoting *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014)).  An employer must prove: (i) "that the asserted 'business necessity' is vital to the business," (ii) "that the examination ... genuinely serves the asserted business necessity," and (iii) "that the request is no broader or more intrusive than necessary." *Blake v. Baltimore Cty., Md.*, 662 F. Supp. 2d 417, 422 (D. Md. 2009) (quoting *Conroy v. N.Y. State Dep't of Corr. Serv.*, 333 F.3d 88, 97-98 (2d Cir. 2003); 42 U.S.C. §12112(d)(4); 29 C.F.R. §1630.14(b), 14(c).

64.    Here, the Defendant fired the Plaintiff because he failed to disclose all prior re-hire injuries without any limitation on whether the injury would preclude the Plaintiff from performing the essential functions of being a Deputy Sheriff.

65. Here, the Plaintiff was able to perform all of the functions of the job as a trainee. The Plaintiff's ability to perform these essential functions was not impaired by his failure to disclose all prior injuries.

66.    Here, after successfully meeting the Defendant's expectations during November 2022 through March 2023 training period, it is obvious the Plaintiff never was a "direct threat" to the public or co-workers.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff requests relief as follows:

  a.  The Plaintiff be reinstated to his former position and receive all economic losses resulting from the unlawful termination, including but not limited to back pay, liquidated damages, front pay, reinstatement of accrued benefits including but not limited to sick pay, pension accrual, vacation pay, and other employment benefits, in an amount that exceeds $75,000.

  b.  For Defendant to be enjoined from further illegal discriminatory acts against Plaintiff.

  c.  For Plaintiff's other non-economic and economic losses both retrospective and prospective as proved at trial including, but not limited to, damage resulting from mental anguish and economic hardship of an amount more than $75,000.

  d. For punitive damages in excess of $75,000,

  e.  For the cost of this suit and reasonable attorney's fees, including under 42 U.S.C. § 1988; and

  f.  For other and further relief as may be requisite.

        _____/s/_____
        John B. Stolarz
        AIS No.: 7911010330
        _____/s/_____
        Michael G. Raimondi
        AIS No.: 8205010259
        The Stolarz Law Firm
        6509 York Road
        Baltimore, MD 21212
        (410) 532-7200
        (410) 372-0529 (fax)  stolarz@verizon.net
        Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Shawntae Jones, Plaintiff, demands a jury trial on all issues.

                                                           _____/s_____
                                                           John B. Stolarz
                                                           Attorney for Plaintiff

---

[i] The Plaintiff is not suing the Office of Sherriff, but Sheriff Cogan in his official capacity. *See O'Connor v. Cameron*, DKC 17-3394, 2019 WL 11122381 at 3 (D. Md. Mar 11, 2019).